**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Anthony MOSCARDELLI, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 10, 2001.
Filed April 20, 2001.

David M. McGlaughlin, Philadelphia, for appellant.

Kevin Steele, Asst. Dist. Atty., Norristown, for Com., appellee.

Before STEVENS, MONTEMURO,* and BECK, JJ.

STEVENS, J.:

¶ 1 This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Montgomery County following Appellant's conviction on three counts of possession with the intent to deliver cocaine, one count of criminal solicitation, seven counts of conspiracy, and one count of possession of drug paraphernalia. On appeal, Appellant's sole contention is that the trial court erred in failing to grant Appellant's motion to produce three confidential informants. We affirm.

¶ 2 The relevant facts and procedural history are as follows: During February of 1998, a confidential informant contacted Detective Mark A. Bernstiel and told him about drug activity in Montgomery County. Specifically, the informant, whose information was corroborated and proved reliable in the past, indicated that Appellant was selling cocaine. As a result, the detective organized an undercover investigation, during which Detective David Evans purchased cocaine from Marco DeSantis, which was supplied by Appellant.

¶ 3 During July of 1998, a second confidential informant told Detective Bernstiel that Appellant was selling cocaine from a bar in Pottstown, Pennsylvania, and confirmed that the cocaine purchased by Detective Evans was supplied by Appellant. The second informant indicated that he/she had purchased cocaine from Appellant.

¶ 4 During August of 1998, a third confidential informant told Detective Bernstiel that she had seen bricks of cocaine hidden in the basement of the subject bar and that Appellant was selling the cocaine. Moreover, the third confidential informant told Detective Bernstiel that Appellant owned a pager and cellular telephone, which he used for selling drugs.

¶ 5 During August of 1998, a fourth informant confirmed the information provided by the other three informants and provided the detective with telephone numbers for Appellant's pager, Appellant's cellular telephone, Appellant's home telephone, and the bar's telephone. The fourth informant indicated that people contacted Appellant by pager, and Appellant would return the page with either his cellular, home, or bar telephone. The fourth informant was acquainted with Appellant for a long period of time and saw cocaine sold at Appellant's residence on at least four occasions.

¶ 6 During the last week of August, 1998, Detective Bernstiel initiated a controlled buy whereby a confidential informant telephoned Appellant and asked Appellant for cocaine. Appellant indicated that he would meet with the informant, but could not quote a price over the telephone. Subsequently, a second call was placed, and Appellant agreed to sell cocaine to the confidential informant, indicating that Appellant's brother would complete the transaction. Appellant's brother later spoke to the informant and established a time and place for the transaction. While conducting a surveillance of the relevant time and place, Detective Bernstiel saw Appellant's brother arrive on the scene, and, when Appellant's brother left, the confidential informant had cocaine.

¶ 7 Believing Appellant was using his pager, cellular telephone, and the bar's telephone in distributing the cocaine, Detective Bernstiel filed an application for a wiretap with regard to the devices at issue.

* Retired Justice assigned to the Superior Court.

On February 8, 1999, this Court issued an order authorizing the interception requested.

¶ 8 Based on information gathered with the use of the wiretap, Detective Bernstiel arrested Appellant during a drug transaction, and one half pound of cocaine was seized. Subsequently, Detective Bernstiel received search warrants permitting him to search the bar and several residences, and further evidence of illegal activity was seized.

¶ 9 On December 1, 1999, Appellant filed a pre-trial motion seeking to suppress, *inter alia,* the evidence seized as a result of the wiretaps. Subsequently, he filed a motion seeking to compel the Commonwealth to produce numerous confidential informants. Following a hearing, the motions were denied on February 7, 2000. Appellant proceeded to a bench trial, was convicted of the offenses indicated *supra,* and was sentenced on April 3, 2000, to an aggregate of fifteen to thirty years' imprisonment. Appellant filed post-sentence motions, which were denied on May 25, 2000, and this timely appeal followed. The trial court ordered Appellant to file a Pa.R.A.P. 1925(b) statement, such a statement was filed, and the trial court filed an opinion.

¶ 10 Appellant contends that the suppression court erred in failing to grant Appellant's motion to produce three confidential informants upon whom Detective Bernstiel relied in securing a wiretap.[1] Appellant avers that the confidential informants should have been produced so that Appellant could prove that Detective Bernstiel used material misrepresentations in securing the subject wiretap, which sup-

plied information leading to Appellant's arrest and the seizure of evidence. Specifically, Appellant contends that since two confidential informants testified that the affidavit contained misrepresentations, Appellant made a *prima facie* showing that the remaining three confidential informants should be produced and the suppression court erred in assessing the credibility of the witnesses.

The Pennsylvania courts have recognized a qualified privilege with respect to confidential informants which permits the Commonwealth to refrain from disclosing the identity of the informer and limits the prosecution's duty to make available to the defense the names and whereabouts of all material witnesses. Regarding this privilege, it has been said that:

> There is no fixed rule with respect to the disclosure of an informant. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstance of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony and other relevant factors. Before disclosure of an informant's identity will be required,...more is necessary than a mere assertion by the defendant that such disclosure might be helpful in establishing a particular defense.... Although the defendant plainly cannot be expected to show that such infor-

---

1. We note that two confidential informants were identified, and they testified at the suppression hearing. In addition, we note that Detective Bernstiel filed an application in the Court of Common Pleas requesting a pen register, which was granted. On appeal, Appel-

lant has not developed an argument as to whether the confidential informants should be produced with regard to the pen register, and, therefore, any issue with regard thereto has been waived.

mation will actually be helpful to his defense, the record should at least suggest a reasonable possibility that the information might be helpful, so that is would be unfair to withhold it.

* * *

[W]hen an informant has not been an eyewitness to and has no firsthand knowledge of the criminal transaction at issue, the need for disclosure is greatly reduced. Ultimately, the decision as to whether...to order disclosure of an informant's identity is within the discretion of the trial court. In exercising its discretion, the trial court should weigh the proof offered by the defendant against the government's privilege to withhold the identity of the informant.

*Commonwealth v. Washington,* 438 Pa.Super. 131, 651 A.2d 1127, 1132 (1994) (citations, quotations, and quotation marks omitted).

¶ 11 Appellant had the burden of establishing why the Commonwealth's qualified privilege should not be sustained with respect to the identity of the informants in this case, none of whom were eyewitnesses to the crime. *Washington, supra.* In attempting to meet his burden, Appellant asserted that the police misrepresented all five informants' statements. As proof that misrepresentation occurred, Appellant offered the testimony of two of the informants, whose identity he apparently discovered on his own. These two women claimed that the statements attributed to them were not true.

¶ 12 The suppression court concluded that the witnesses' direct and cross-examination established that the witnesses' statements made to police were accurate and that the witnesses' testified differently because they were afraid of Appellant. The proof offered by Appellant had little,

if any, weight. His failure to establish any misrepresentations, coupled with the fact that he unwittingly established that at least two of the informants were afraid to testify against him, militated in favor of sustaining the Commonwealth's privilege with respect to the remaining informants.

¶ 13 Affirmed.